UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JUNGBUNZLAUER INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>        Defendants. | Court No. 25-00909 |

**COMPLAINT**

Plaintiff, Jungbunzlauer Inc., by and through its attorneys, allege the following against the United States, acting by and through U.S. Customs and Border Protection ("CBP"):

1.    Plaintiff Jungbunzlauer Inc. is a U.S.-based importer of merchandise subject to the challenged tariffs.

2.    Beginning in February 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA tariffs") on goods imported from nearly every foreign country, including countries from which Plaintiff sources their imports. Plaintiff is responsible for paying these tariffs on its imported goods, and CBP is responsible for the collection of these tariffs.

3.    This Court and the Federal Circuit have held that IEEPA does not authorize these tariffs. *V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed. Cir.), *cert. granted,* No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). Specifically, these Courts have determined that the

IEEPA tariffs imposed by Defendants, and the underlying executive orders that directed them, are unlawful.

4.      Plaintiff asks the Court in this action to issue the same ruling that it and the Federal Circuit already held in *V.O.S. Selections*.

5.      The Supreme Court heard oral argument in *V.O.S. Selections* on November 5, 2025, and is expected to rule in the near future.  However, this action is necessary now because importers that have paid IEEPA duties, including Plaintiff, are not guaranteed a refund for those unlawfully collected tariffs in the absence of their own judgment and judicial relief.

6.      Moreover, this Court and the Federal Circuit have cautioned that an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases,* 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States,* 134 F.4th 1307, 1316 (Fed. Cir. 2025).

7.      Entries for which Plaintiff has paid IEEPA tariffs will soon begin liquidating (with some already subject to liquidation), and Plaintiff seeks to protect its right to a complete refund in the event that the IEEPA tariffs and the underlying executive orders are held to be unlawful by the Supreme Court.

8.      The tariffs illegally imposed by the President via IEEPA directly and irreparably harm Plaintiff who faces increased costs for the goods it sells as a result of the contested tariffs.

**PARTIES**

9.      Plaintiff Jungbunzlauer Inc. (JBL Inc.) is the U.S. sales company for products from the Jungbunzlauer Group (Jungbunzlauer) that are sold in the United States and Canada. Headquartered in Basel, Switzerland, Jungbunzlauer is a leading producer of high-quality,

biodegradable ingredients and serves industries from food and beverage, to nutrition, health, and home and personal care, among others. Jungbunzlauer operates state-of-the-art facilities across Europe and North America, including some of the largest fermentation operations in the world. JBL Inc. is located near Boston and acts as the U.S. importer of record of products produced by Jungbunzlauer.

10. Plaintiff has paid and continues to pay the IEEPA tariffs that are being contested in this action when it imports goods into the United States.

11. Defendant United States Customs and Border Protection ("CBP") is a federal agency within the U.S. Department Homeland Security, and CBP is responsible for collecting tariffs or duties and taxes on goods imported into the United States.

12. Defendant Rodney S. Scott is the Commissioner of CBP and is named in his official capacity.

13. Defendant United States of America is the federal government of the United States of America and received the disputed tariffs.

## JURISDICTION

14. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted,* No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

15. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

16.     Plaintiff has standing to bring this lawsuit because it is importer of record for goods imported into the United States from countries subject to the unlawful IEEPA tariffs as administered and collected by CBP. As a result of the executive orders challenged by this lawsuit, Plaintiff has paid IEEPA tariffs to the United States and thus has suffered injury caused by the contested executive orders.

## STANDARD OF REVIEW

17.     The Administrative Procedure Act ("APA"), codified at 5 U.S.C. § 706, provides that the Court has the authority to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

18.     This Court has determined that judicial review is available in actions challenging the President's reliance on IEEPA to authorize new and substantial tariffs ("IEEPA Tariffs") on goods imported from nearly every country. *See V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted,* No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). "{C}laims that the President's actions violated the statutory authority delegated to him . . . are reviewable." *USP Holdings*, *Inc. v. United States*, 36 F.4th 1359, 1365 (Fed. Cir. 2022). Furthermore, the Court retains "jurisdiction to consider challenges to the President's action in suits against subordinate officials who are charged with implementing the presidential directives." *Id.* at 1366. *See also Florsheim Shoe Co. v. United States*, 744 F.2d 787, 795 (Fed. Cir. 1984) ("{T}he Executive's decisions in the sphere of international trade are reviewable only to determine whether the President's action

falls within his delegated authority, whether the statutory language has been properly construed, and whether the President's action conforms with the relevant procedural requirements.")

19.     Rule 56(a) of the U.S. Court of International Trade states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## STATEMENT OF FACTS

**Executive Orders Invoking the International Emergency Economic Powers Act ("IEEPA")**

20.     On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China (referred to collectively as the "Trafficking Tariff Orders").  Each order was premised on IEEPA authorizing the tariffs, and for each set of tariffs the President claimed that they were justified under IEEPA because of a purported national emergency.

21.     The first executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*,[1] declared an emergency because of opioid trafficking and imposed a 25 percent tariff, with certain exceptions.

22.     The second executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border*,[2] imposed an additional 25 percent tariff on the import of goods from Mexico. The President's claim of

---

[1] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 9,113 (Feb. 7, 2025)
[2] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border,* 90 Fed. Reg. 9,117 (Feb. 7, 2025).

emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

23. Finally, the third executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9,121, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*,[3] also declared an emergency because of opioid trafficking and imposed a further 10 percent *ad valorem* tariff on products from China imported into the United States in addition to existing tariffs on all imports from China.

24. On February 3, 2025, the President issued two additional executive orders: Executive Order 14197, *Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9,183 (Feb. 10, 2025)[4] and Executive Order 14198, *Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9,185 (Feb. 10, 2025).[5]  Finding that the governments of Canada and Mexico had "taken immediate steps designed to alleviate the illegal migration and illicit drug crisis through cooperative actions", the President paused the 25 percent duties on imports from these countries until March 4, 2025.  *Id*.

25. On March 3, 2025, the President amended the order on China through Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid*

---

[3] Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 7, 2025)
[4] Exec. Order No. 14197, *Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9,183 (Feb. 10, 2025).
[5] Exec. Order No. 14198, *Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9,185 (Feb. 10, 2025).

*Supply Chain in the People's Republic of China.*[6] This amendment raised the incremental tariffs on imports from China to 20 percent because "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

26. On April 2, 2025, citing trade deficits with U.S. trading partners as a national emergency, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits.*[7] The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports into the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

27. On April 8, 2025, the President responded to retaliatory tariffs from China by issuing Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China,* 90 Fed. Reg. 15,509.[8] This amendment raised the reciprocal tariff rate on China from 34 percent to 84 percent.

*28.* On April 9, 2025, the President issued another order, Executive Order 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment,* 90 Fed. Reg. 15,625 (Apr. 12, 2025).[9] This order paused the higher country-specific tariffs on most countries for 90 days while leaving the global 10 percent reciprocal tariff in place for all countries. For China,

---

[6] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 11,463 (Mar. 7, 2025).
[7] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits,* 90 Fed. Reg. 15,041 (Apr. 7, 2025).
[8] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports From the People's Republic of China,* 90 Fed. Reg. 15,509 (Apr. 14, 2025).
[9] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15,625 (Apr. 15, 2025).

the President raised the "reciprocal" tariff again—from 84 percent to 125 percent. The 20 percent trafficking tariff on imports from China remained in place, which meant that most imports from China faced a minimum IEEPA tariff of 145 percent.

29. On April 14, 2025, several companies filed an action in this Court challenging the legality of these executive orders imposing tariffs under IEEPA. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.,* No. 25-cv-00066 (ECF. 2). As discussed below, this Court held the orders were unlawful and the Federal Circuit affirmed *en banc*.

30. On May 12, 2025, the President issued Executive Order 14228, *Modifying Reciprocal Tariff Rates To Reflect Discussion With the People's Republic of China*, 90 Fed. Reg. 21,831 (May 21, 2025).[10] This amendment lowered the IEEPA Reciprocal Tariff on Chinese goods from 125 percent to 10 percent, but the 20 percent IEEPA tariff on China for opioid trafficking remained unchanged.

31. On July 30, 2025, the President issued Executive Order 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (Aug. 5, 2025).[11] Citing the political prosecution of former Brazilian President Jair Bolsonaro as "an unusual and extraordinary threat", the President imposed an additional 40 percent tariff on imports from Brazil.

32. On July 31, 2025, the President issued Executive Order 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963 (Aug. 6, 2025).[12] This order

---

[10] Exec. Order No. 14228, *Modifying Reciprocal Tariff Rates To Reflect Discussion With the People's Republic of China*, 90 Fed. Reg. 21,831 (May 21, 2025).
[11] Exec. Order No. 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (Aug. 5, 2025).
[12] Exec. Order No. 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963 (Aug. 6, 2025).

reinstated the country-specific IEEPA reciprocal tariffs, and the minimum tariff rate imposed was 10 percent.

33.   Also on July 31, 2025, the President issued <u>Executive Order 14325</u>, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 37,957 (Aug. 6, 2025).[13]  The President ordered that a 25 percent IEEPA Trafficking tariff be imposed on imports from Canada, effectively raising the total IEEPA tariff on Canada to 35 percent.

34.   On August 6, 2025, the President issued <u>Executive Order 14329</u>, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025).[14]  This Executive Order imposed an additional 25 percent tariff on imports from India for "directly or indirectly importing Russian Federation oil."  *Id.*

**Claimed Statutory Authority for Executive Orders Imposing Trafficking, Reciprocal and Other Related Tariffs**

35.   The Executive Orders imposing additional tariffs on imports from Canada, Mexico, China, and the rest of the world cite to and rely upon the following statutes as legal authority for imposing the contested tariffs: the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.,* the National Emergencies Act, 50 U.S.C. § 1601 *et seq.,* section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301.

36.   None of these statutes authorizes the President to impose tariffs.

---

[13] Exec. Order No. 14325, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 37,957 (Aug. 6, 2025).
[14] Exec. Order No. 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025).

37. IEEPA grants the President certain powers which "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

38. The text of IEEPA does not contain the word "tariff' or use any term of equivalent meaning.

39. IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize the imposition of tariffs.

40. No previous President has used IEEPA to impose tariffs. Tom Campbell, *Presidential Authority to Impose Tariffs*, 83 La. L. Rev. 596, 597 (2023).

41. The National Emergencies Act (50 U.S.C. § 1601 et seq.) does not authorize the contested tariffs; it merely governs procedures for declaring and ending national emergencies.

42. Section 604 of the Trade Act of 1974, as amended (19 U.S.C. § 2483) does not authorize the contested tariffs; it merely assigns to the President the task of periodically updating the Harmonized Tariff Schedule of the United States ("HTSUS") to reflect changes in policy that have occurred. It does not set out any power, authority, or process by which the President may unilaterally set such policies.

43. Section 301 of Title 3 (3 U.S.C. § 301) does not authorize the contested tariffs; it merely gives the President the general authority to delegate functions to subordinate federal officials.

**The Constitution of the United States vests the power to impose tariffs in Congress—not the President.**

44. The United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

45. The United States Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises..." U.S. CONST. art. I, § 8, cl. 3 ("Taxing Clause"), and "[t]o regulate Commerce with foreign Nations." *Id.,* cl. 3 ("Commerce Clause").

46. It has always been understood that tariffs fall within the Taxing and Commerce Clauses.

47. To the extent it is ever permissible under the U.S. Constitution for Congress to delegate any part of the powers vested in it by the Constitution to the President, it must do so, at a minimum, by providing an intelligible principle to direct and cabin the President's authority. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.,* 145 S. Ct. 2482, 222 L. Ed. 2d 800 (2025).

48. IEEPA provides no intelligible principle for the imposition of tariffs. Indeed, IEEPA does not authorize the imposition of tariffs, and IEEPA provides no principle by which this Court might determine whether the guidance Congress provided has been followed.

49. If IEEPA were read as authorizing the imposition of tariffs, it would be necessary to strike down IEEPA as unconstitutional under the nondelegation doctrine for lack of any intelligible principle.

50. Moreover, "[c]ourts expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *West Virginia v. EPA,* 597 U.S. 697, 716 (2022) (cleaned up) *(quoting Utility Air Regulatory Group v. EPA,* 573 U. S. 302, 324 (2014)). When Congress has not clearly spoken, courts are directed to find that matters "of vast economic and

political significance" are beyond the power of the President. *Biden v. Nebraska,* 600 U.S. 477, 505-06 (2023).

51. By any objective measure, the contested Executive Orders are "of vast economic and political significance." Because IEEPA does not clearly authorize the President to set tariffs—given that the statute does not mention the words "tariff" or "duty" and is not even contained in the same title of the U.S. Code as Congress's actual trade laws (Title 19)—the contested Executive Orders cannot stand and the Defendants are not authorized to impose and collect these tariffs.

**This Court and the Federal Circuit have held that IEEPA does not authorize these tariffs.**

52. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

53. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

54. The Federal Circuit issued an *en banc* decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted,* No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

55. In a separate lawsuit filed by a different group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump,* 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment,* No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court

granted certiorari in both V.O.S. *Selections* and *Learning Resources.* The cases were consolidated, with argument held on November 5, 2025, and a decision from the Supreme Court is expected soon.

**STATEMENT OF CLAIMS**

**COUNT I**

**THE PRESIDENT'S EXECUTIVE ORDERS IMPOSING IEEPA TARIFFS EXCEEDS HIS STATUTORY AUTHORITY AND ARE *ULTRA VIRES* UNDER *V.O.S. SELECTIONS***

56. Plaintiff incorporates paragraphs 1-55 above by reference.

57. The Court of International Trade in *V.O.S. Selections, Inc. v. Donald J. Trump,* 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd,* 149 F.4th 1312 (Fed. Cir. 2025), held that the President exceeded his authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

58. As this Court explained in *V.O.S. Selections*, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency; it does not authorize the imposition of tariffs or duties on imports, and neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

59. The Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA and that reading IEEPA to permit such authority would raise grave constitutional concerns, including under the major questions and non-delegation doctrines.

60. For the same reasons set forth in *V.O.S. Selections* and its affirmance by the Federal Circuit, the contested Executive Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio,* and without effect as applied to Plaintiff.

61. Plaintiff respectfully requests that this Court apply its precedent and the binding decision of the Federal Circuit, declare the contested orders unlawful, enjoin Defendants from enforcing these tariffs as to Plaintiff, and order refunds of all IEEPA tariffs collected from Plaintiff, with interest as provided by law.

**COUNT II**

**IF THE IEEPA DOES GRANTS BROAD, UNLIMITED AUTHORITY TO THE PRESIDENT TO IMPOSE TARIFFS WORLDWIDE, IT IS AN UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE AUTHORITY**

62. Plaintiff incorporates paragraphs 1-61 above by reference.

63. If the Court were to construe IEEPA as authorizing tariffs, the contested Executive Orders must nevertheless be held unlawful because in that event IEEPA would constitute an impermissible delegation of legislative power from Congress to the President.

64. The Constitution of the United States exclusively vests in Congress the power to "lay and collect ... Duties." U.S. CONST. art. I, § 8, cl. 1.

65. Under separation-of-powers principles and binding precedent of the U.S. Supreme Court, Congress cannot delegate its power to the President unless, at the very least, it provides an intelligible principle that directs and meaningfully constrains the President's exercise of that power.

66. IEEPA provides no intelligible principle for the imposition of tariffs. Indeed, IEEPA does not authorize tariffs at all, and it provides no principle by which this Court might determine whether the guidance Congress provided has been followed.

67. Plaintiff therefore seeks a declaration that the contested Executive Orders are unconstitutional as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order refunds of all of the IEEPA tariffs paid by Plaintiff, with interest as provided by law.

## COUNT III

### (DECLARATORY RELIEF, 28 U.S.C. § 2201)

68. Plaintiff incorporates paragraphs 1-67 above by reference.

69. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

70. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

71. Plaintiff is an importer of record and have suffered injury by having been required to pay IEEPA duties as a result of the contested Executive Orders on goods it has imported into the United States.

72. For any of the above reasons, this Court can exercise its equitable power to enter a declaratory judgment that the contested Executive Orders are unlawful and that CBP lacks authority to implement and collect the resulting tariffs as to Plaintiff.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

    a) declare that the President lacks authority under IEEPA to impose tariffs;

    b) declare that the contested Executive Orders are *ultra vires* and void *ab initio*;

c) declare that, with respect to Plaintiff, CBP lacks authority to collect any tariffs imposed by the contested Executive Orders;

d) enjoin Defendants, with respect to Plaintiff, from implementing and collecting any tariffs imposed by the contested Executive Orders;

e) order the United States to refund to Plaintiff the IEEPA tariffs paid by Plaintiff, with interest as provided by law, including refunds after reliquidation of Plaintiffs' entries that have been liquidated by CBP;

f) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

g) grant such further relief as this Court deems proper.

Respectfully submitted,

Dated: December 23, 2025

/s/ Frederick P. Waite

Frederick P. Waite
Kimberly R. Young
VORYS SATER SEYMOUR AND PEASE LLP
1909 K Street, NW, Suite 900
Washington, DC 20006
(202) 467-8852 / 8881
fpwaite@vorys.com / kryoung@vorys.com

*Counsel for Plaintiff*